UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                                          2:06-cr-48-FtM-29DNF

EDDIE BROWN

_____

**OPINION AND ORDER**

This matter came before the Court on January 29, 2007 for sentencing. Defendant made objections to the Presentence Sentence concerning relevant conduct, reckless endangerment during flight, possession of a firearm, and safety valve. The Court heard testimony from five witnesses, then continued the sentencing hearing pending resolution of these disputes. The government filed a Sentencing Memorandum of Law (Doc. #34) on January 30, 2007. The Court makes the following determinations pursuant to Fed. R. Crim. P. 32(i)(3)(B).

**I.**

The Court finds the government has established the following facts by a preponderance of the evidence: On August 3, 2005, members of the Lee County Sheriff's Office were conducting a "spotting operation" against street level narcotics transactions in a residential area of the Harlem Heights section of Lee County, Florida. From a hidden location, at about 7 p.m. Detective Mark Shelly observed a dark blue Maxima and a Taurus stop in the middle

of a residential road parallel to each other, blocking each direction on the road.  Detective Shelly observed an exchange of something between the vehicles, but he could not determine what was exchanged.  Both vehicles then left, and both failed to stop at stop signs.  Detective Shelly notified fellow team members of this traffic violation so they could make traffic stops of the vehicles.  The blue Maxima was driven by defendant Eddie Brown. Detective Shelly was familiar with defendant Brown from a couple of weeks before, and was familiar with the blue Maxima from a couple days before this event.  No details of these familiarities were discussed at the evidentiary hearing.  In light of all the circumstances, including those discussed below, the Court finds this was an unlawful drug transaction, although it is not clear whether defendant Brown was the buyer or the seller.

Corporal Bobby Black of the Lee County Sheriff's Office was working as a uniformed support officer in this spotting operation.  He received notification of the Maxima's traffic violation, and saw the Maxima proceeding eastbound on Gladiolus.  He observed that defendant Brown, a person he had known for several years, was driving the Maxima.  Corporal Black caught up with the Maxima and activated his overhead lights near Gladiolus and Bass.  When the Maxima did not stop, Corporal Black briefly activated his loud speaker.  Defendant then sped away east on Gladiolus at a high rate of speed.  Corporal Black did not chase the vehicle, but returned to the surveillance area.

Defendant Brown proceeded east on Gladiolus, then made a left turn onto Winkler Road, and shortly thereafter rolled the Maxima over while on Winkler Road and Franchi Blvd., north of Gladiolus. Lee County Sheriff's Deputy Jeffery Pierot was at the intersection of Winkler Road and Gladiolus waiting to work an off-duty assignment at the construction site at the intersection. Deputy Pierot, who has worked traffic investigations for most of his twenty-one years with the Sheriff's Office, went to the scene of the accident and discovered that the Maxima had been involved in a rollover accident. Government's Exh. 2. Deputy Pierot determined that the Maxima had been traveling at a high rate of speed, the driver lost control and rolled the vehicle over, and the vehicle ended up about fifteen feet off the road in a swale. Debris from the vehicle, cash, and a firearm were discovered about ten feet from the passenger's side of the vehicle, which was consistent with the dynamic force of the roll-over had these items been inside the Maxima; loose money was blowing around. Because the firearm was "cocked and locked," Deputy Pierot retrieved the firearm prior to it being photographed by other officers. Witnesses reported to Deputy Pierot that a black male had been driving the Maxima and had run from the area after the roll-over, and there had been no other vehicle occupants. A witness also gave Deputy Pierot a driver's license which he found at the scene. Government's Exh. 6. The driver's license depicts defendant Brown. One of the witnesses

identified defendant Brown from a photo spread, and one did not identify anyone from the photo spread.

Detective Shelly also responded to the scene of the rollover and searched the vehicle, finding what was later determined to be 1.6 grams of crack cocaine in the console, 16.6 grams of powder cocaine in a cracker box, and in excess of $900 in U.S. currency. Detective Shelly testified that he knew of no connection between these drugs and the drugs which were subsequently purchased from defendant on September 15, 2005.

Later in the evening, Detective Shelly received a telephone call from a person identifying herself as Thelma Simmons, defendant's mother. Ms. Simmons was mad that the police had been chasing her son, and said her son was not hurt and that she needed a police report of the accident. It was determined that the Maxima had been rented in her name four days before these events. It was subsequently determined that the firearm had been stolen in a burglary in North Fort Myers on June 17, 2005.

On September 15, 2005, the Lee County Sheriff's Office Narcotics Unit utilized a confidential informant to purchase 30.4 grams of crack cocaine, cocaine base, from defendant Brown. This transaction is correctly summarized in paragraphs 18 and 19 of the Presentence Report.

On March 15, 2006, defendant Brown was indicted on two charges. Count One of the Indictment (Doc. #1) charges that on August 3, 2005, he possessed with intent to distribute and

distributed a detectable amount of cocaine and a detectable amount of cocaine base, crack cocaine.  Count Two charges that on September 15, 2005 defendant Brown possessed with intent to distribute and distributed five grams or more of cocaine base, crack cocaine.  Pursuant to a Plea Agreement (Doc. #28), defendant Brown pled guilty to Count Two of the Indictment.  No specific mention of Count One is made in the Plea Agreement, but the factual basis makes no reference to the facts underlying that count and the Court infers the government will dismiss that count at sentencing.

## II.

The Presentence Report has considered the events of August 3, 2005 to be relevant conduct to the September 15, 2005 offense of conviction.  Doing so does not change the Base Offense Level, since the small amount of crack cocaine from August 3, 2005 does not affect the determination under the Drug Quantity Table and the cocaine does not impact the Drug Quantity Table at all. (Presentence Report, ¶¶ 25-27.)  Defendant nonetheless objects to the inclusion of the August 3, 2005, events because if properly considered relevant conduct they supply the basis for the firearm enhancement under Sentencing Guidelines § 2D1.1(b)(1) (Id. at ¶ 28), the reckless endangerment during flight enhancement under Sentencing Guidelines § 3E1.1(a) (Id. at ¶¶ 22, 31), and the denial of safety valve eligibility.

**A.   Relevant Conduct:**

As relevant to this case, "relevant conduct" includes all acts and omissions committed by the defendant that occurred during the commission of the offense of conviction, U.S.S.G. § 1B1.3(a)(1), and acts and omissions committed by defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). "The Court broadly interprets the provisions of the relevant conduct guideline." United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996). The Background commentary to § 1B1.3 states that "in a drug distribution case, quantities and types of drugs not specified in the court of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." The issue in this case is whether the events of August 3, 2005 are either "part of the same course of conduct" or part of the same "common scheme or plan" as the September 15, 2005 crack cocaine sale by defendant.

Under the Sentencing Guidelines, a "common scheme or plan" requires that two or more offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose or similar modus operandi." U.S.S.G. § 1B1.3 application note 9(A). Offenses which do not qualify as part of a common scheme or plan may qualify as part of the "same course of conduct" "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of

-6-

offenses." U.S.S.G. § 1B1.3 application note 9(B). "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id. "When one of the above factors is absent, a stronger presence of at least one of the other factors is required." Id.

The relevant conduct provision was designed to take account of "a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing," and therefore "when illegal conduct does exist in discrete, identifiable units apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct." United States v. Maxwell, 34 F.3d 1006, 1010-11 (11th Cir. 1994). To determine relevant conduct, the Court looks "to the 'similarity, regularity, and temporal proximity' between the offense of conviction and the uncharged conduct." United States v. Amedeo, 370 F.3d 1305, 1314 (11th Cir. 2004)(quoting Maxwell, 34 F.3d at 1011); United States v. Blanc, 146 F.3d 847, 853 n.1 (11th Cir. 1998). "We must consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." Id. It is reversible error to consider

conduct which exists in discrete, identifiable units apart from the offense of conviction as relevant conduct. Maxwell, 34 F.3d at 1011. While separately charged conduct which is dismissed pursuant to a plea agreement is not *categorically* excluded as relevant conduct, the fact of a separate charge suggests that the dismissed offense was sufficiently distinct from the offense of conviction. Amedeo, 370 F.3d at 1315-16.

The Court finds that the August 3, 2007, events are not part of relevant conduct because they are neither part of the same course of conduct or part of the same common scheme or plan. The events both involved possession and distribution of controlled substances, and the Court is not concerned with the presence of cocaine during one transaction but not the other. Amedeo, 370 F.3d at 1315. There was approximately six weeks between the events, and while this is not a long period of time, nothing transpired during this period which would link the events in any fashion or to establish a pattern or any regularity to the drug sale which constitutes the offense of conviction. There is nothing to suggest that the crack cocaine was from the same source or even the same "stash," since the lab report establishes that the purity level of one was almost three times the purity of the other. None of the testifying officers gave any connection to the events, and one affirmatively stated he knew of no such connection between the drugs. The August 3, 2005 events were sufficiently discrete and identifiable that they were the subject of a separate count,

-8-

although that count will be dismissed. All that is left is that both events involve drug distribution, which the Eleventh Circuit has already rejected as a basis to find relevant conduct. Maxwell, 34 F.3d at 1011.

**B. Other Objections:**

The reckless endangerment during flight and the firearm enhancement all require that the conduct occur during the offense of conviction or relevant conduct. Since the Court has determined that the August 3, 2005 events were not relevant conduct, these enhancements are not applicable.

Accordingly, it is now

**ORDERED:**

1. Defendant's objections to ¶¶ 22 and 31 are sustained, and the two level enhancement in ¶ 31 is deleted.

2. Paragraph 26 shall be amended to hold defendant responsible for only the September 15, 2005 drugs. The objection to ¶ 27 is overruled because the base offense level would not change.

3. Defendant's objection to ¶ 28 is sustained, and the two level enhancement is deleted.

4. The Adjusted Offense Level (¶ 32) becomes 28, and the Total Offense Level (¶ 35) becomes 25. Paragraph 67 will be amended to reflect a Total Offense Level of 25, a Criminal History

of I, and a resulting Sentencing Guidelines range of 60 months (mandatory minimum) to 71 months.

5. At this point, defendant does not qualify for safety valve, so that objection is overruled, but may be re-raised at the sentencing hearing if the proffer requirement is satisfied.

6. Pursuant to Fed. R. Crim. P. 32(i)(3)(C), the U.S. Probation Office is directed to append a copy of this Opinion and Order to any copy of the presentence report made available to the Bureau of Prisons.

**DONE AND ORDERED** at Fort Myers, Florida, this __2nd__ day of February, 2007.

```
                                    _____
                                    JOHN E. STEELE
                                    United States District Judge
```

Copies:
Counsel of Record
U.S. Probation